# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
      **Plaintiff,**

    v.                                                                    **Case No. 14-CR-119**

**YVONNE DIKIARA**
      **Defendant.**

## SENTENCING MEMORANDUM

Defendant Yvonne Dikiara pleaded guilty to an information charging her with mail fraud, 18 U.S.C. § 1341, related to her embezzlement of more than $1,000,000 from her employer. I ordered a pre-sentence report ("PSR") and set the case for sentencing.

In imposing sentence, the district court must engage in a two-part analysis. First, it must determine the defendant's sentencing range under the advisory guidelines. Second, it must hear the arguments of the parties and then make an individualized assessment of the appropriate sentence based on all of the factors set forth in 18 U.S.C. § 3553(a). United States v. Adkins, 743 F.3d 176, 189 (7th Cir. 2014).

## I. GUIDELINES

Defendant's PSR set a base offense level of 7 under U.S.S.G. § 2B1.1(a)(1), added 16 levels under § 2B1.1(b)(1)(I) based on the loss amount, added an additional 2 levels under U.S.S.G. § 3B1.3 because defendant abused a position of trust in order to commit the crime, then subtracted 3 levels under U.S.S.G. § 3E1.1 based on her acceptance of responsibility, for a final offense level of 22. Coupled with her criminal history category of I, this produced an imprisonment range of 41-51 months. Neither side objected to these calculations, which I

adopted.

## II. SECTION 3553(a) FACTORS

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory sentencing guideline range];

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2). Id. This "parsimony provision" serves as the "overarching command" of the statute. See Kimbrough v. United States, 552 U.S. 85, 101 (2007).

# III. DISCUSSION

## A. The Offense

From 2001 to 2012, defendant stole in excess of $1,000,000 from her employer, a business that booked local cover bands and operated two roller rinks and a banquet center. Using her position as office manager, responsible for payroll and check writing for the businesses, defendant wrote checks drawn on the employer's accounts to either herself or one of her creditors. She also made checks out to fictitious entities, depositing them into her personal accounts. Defendant forged the owner's name on the embezzled checks; she had authorization to sign his name to legitimate business checks in his absence, but this obviously did not extend to stealing by forging his signature.

Defendant gambled away virtually all of the proceeds of her crime at Potawatomi Casino. Records from the casino show that she lost more than $1.6 million between 2001 and 2012. In addition to the money she stole, defendant spent most her husband's approximately $300,000 in retirement money within approximately three years of his 2009 retirement. Defendant and her husband lost their home to foreclosure and owe Wisconsin taxes because the state does not allow deduction of gambling losses from gambling winnings for tax purposes.

In his statement to the court, the victim discussed the significant impact this crime had on him financially, as well as on the other employees of the business. He indicated that defendant destroyed records to cover up her theft, leaving him and his accountant with a colossal mess. She also failed to pay vendors in a timely fashion in order to leave more money available for embezzlement. In addition to the financial impact, he spoke of the profound abuse of trust involved.

In her statement, defendant indicated that she was drawn into the casino as an escape from her day to day life. What began as stress relief soon grew into an addiction. Once she started gambling and taking money to cover the losses, she did not know how to stop. She expressed deep regret for the harm she caused her employer, to whom she felt great loyalty and appreciation. She further indicated that following the discovery of her conduct she sought out help for her gambling, attending weekly Gamblers Anonymous ("GA") meetings, as well as individual counseling, and had herself banned from the casino.

### 2. The Defendant

Defendant was 56 years old, with no prior record and an otherwise positive background. Married for over 30 years, she had two adult children with her husband. She graduated high school, then worked for the victim of the offense for about 26 years. About a year after her termination, she was able to find a new job, which seemed to be going well. Her supervisor knew about this offense but nevertheless wrote a positive letter, as did a co-worker.

Defendant had twice been treated for breast cancer, in 2005 and again in 2013. She lost her mother and two sisters to that disease. Defendant indicated that she started gambling in the early 2000's, which increased after her cancer diagnosis in 2005. Defendant had also been treated for diabetes, high blood pressure, and sleep apnea. She presented a detailed report from her counselor at Brighter Days Counseling, Todd Zangl, which discussed her background, progress in treatment, and prognosis going forward. Defendant had no substance abuse issues.

### 3. The Sentence

The government recommended a sentence at the low end of the guideline range, while

defendant requested a term of 12 months and one day. I agreed with the parties that a prison sentence was needed to satisfy the purposes of sentencing in this case, most significantly the need to provide just punishment and promote respect for the law. This was a serious crime, which went on for over a decade, caused substantial losses, and involved a significant abuse of trust. The crime harmed the employer personally, in addition to the other employees of the company, who also lost income.

The parties debated the extent to which a prison sentence would serve the purpose of general deterrence. The Sentencing Commission addressed general deterrence in this context in originally adopting the guidelines, noting that in the pre-guideline era many defendants convicted of fraud or embezzlement received probationary sentences. The Commission endorsed at least a short period of imprisonment in these cases, concluding that the definite prospect of prison, even though the term may be short, would serve as a significant deterrent. United States Sentencing Commission, Guidelines Manual ch. 1, pt. A, 4(d). However, the concept of general deterrence "depends on potential offenders' rational assessment of the likely costs and benefits of crime." United States v. Bannister, 786 F. Supp. 2d 617, 660 (E.D.N.Y. 2011). While it may be that white collar offenders are generally better able to rationally calculate than other offenders, this case involved a defendant with a gambling addiction, and as discussed later in this decision, such persons lack the that capacity. Thus, while general deterrence was a possibility, I imposed the prison term based primarily on the seriousness of the offense.

In determining the length, I found prison term below the guideline range sufficient. The range in this case was, as in most such cases, driven by the loss enhancement. As defendant noted, that enhancement has been increased over the years for reasons that have not been

5

all that well explained.  See United States Sentencing Commission, Guidelines Manual App. C – Volume II 179 (amendment 617) (indicating that the higher loss enhancements responded to comments that the guideline under-punished "individuals involved with moderate and high loss amounts, relative to penalty levels for offenses of similar seriousness sentenced under other guidelines").  Moreover, the guideline fails to take into account other relevant factors, including motive and culpability.  See United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2005).

In the present case, I first considered the impact of defendant's gambling addiction on her conduct.  Defendant did not act out of a desire to harm her employer, nor did she steal in order to finance a lavish lifestyle.  Virtually all of the money went to the casino.  The records from the casino demonstrated substantial losses, which ate up not just the proceeds of the crime but also defendant and her husband's savings.

As Judge Mark Bennett recently explained, addiction can mitigate a defendant's culpability.  "By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors.  Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences."  United States v. Hendrickson, No. CR 13-4110, 2014 WL 2600090, at *5 (N.D. Iowa June 11, 2014).  Judge Bennett was talking about drug addiction, but as the evidence defendant presented showed, gambling addiction is similar.  The American Psychiatric Association recently reclassified pathological gambling from an impulse control disorder to an addiction-related disorder.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") 585 (5th ed. 2003); see also Ferris Jabr, How the Brain Gets Addicted to Gambling, Scientific American, Nov. 5, 2013.  Defendant also

6

cited research that slot machines, her preferred mode of gambling, were more addictive than other forms of gambling. See Natasha Dow Schull, Slot Machines are Designed to Addict, N.Y. Times, Oct. 10, 2013 ("Studies by a Brown University psychiatrist, Robert Breen, have found that individuals who regularly play slots become addicted three to four times faster (in one year, versus three and a half years) than those who play cards or bet on sports."). The report from counselor Zangl described addictive type behaviors and reactions on defendant's part, including a description of how she was drawn to the machines – the colors and the themes. The report also indicated that she kept thinking she would eventually win enough to pay back the money she had taken. This too was consistent with the literature, including the notion of "chasing one's losses" referenced in the DSM-V. Defendant further presented literature discussing how this kind of addiction can lead from hoping for a big score to cover past losses on to illegal activity. S.H. Dakai, Compulsive Gambling: An Examination of Compulsive Gambling, Including Pathology, Chemistry Exchange, Similarities to and Differences from Substance Abuse, Gambling Phases, and Assessment Questionnaires, Journal of Addictive Disorders, 8-9 (2004). Given the impact of her gambling addiction, which was well-supported by the defense materials, a below range term sufficed to provide just punishment.[1]

Second, I took into account defendant's efforts to obtain treatment and rebuild her life after this crime came to light. A defendant suffering from an addiction or compulsion may be less culpable but, without treatment, may present a greater risk of recidivism if the condition

---

[1] In U.S.S.G. § 5H1.4 (policy statement), the Commission indicated that addiction to gambling was not reason for a downward departure. However, such provisions are not binding on the court in determining the sentence under § 3553(a). See, e.g., United States v. Reyes-Medina, 683 F.3d 837, 841-42 (7th Cir. 2012). For the reasons stated in the text, defendant's gambling addiction was directly relevant to the sentencing factors under § 3553(a).

7

is not addressed. In the present case, both the Zangl report and the PSR confirmed that defendant's addiction had been addressed. She regularly attended GA meetings, participated in individual counseling, and voluntarily banned herself from the casino. The counselor was positive about her prospects, indicating that she had been totally compliant with their treatment plan. Her GA sponsor and the leader of her meeting group also provided positive letters. Defendant also found new work, which was positive both for her personal prospects as well as the prospect of restitution for the victim. As indicated above, her current employer, who knew about this offense, thought highly of her.

Third, I took into account defendant's lack of any prior record, which bore to some extent on culpability but more on the need to protect the public. I saw little such need here, given her age, lack of record, progress in treatment, poor health, and strong family support. Her husband attended GA meetings with her so he could help her avoid problems in the future. I also considered the fact that she had never served any time before. Generally speaking, a lesser sentence will suffice to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005). Research also demonstrates that persons in their fifties and sixties re-offend at very low rates, particularly in criminal history category I. See United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines 28 (2004).

Finally, I took into account defendant's acceptance of responsibility, admitting the crime to her employer and then the FBI when confronted. She pleaded guilty to an information and seemed genuinely remorseful. Prior to sentencing she made a restitution payment of $5400, modest compared to what she owed, but nevertheless a positive development. This also

8

demonstrated remorse and a desire to make amends, and suggested that I should take restitution payment into account in determining the sentence. See 18 U.S.C. § 3553(a)(7). The term should not be so long that it would destroy her ability to pay back more of what she owed.

These mitigating circumstances did not eliminate the need for punishment – I still found a prison sentence necessary – but they did temper it. Under all the circumstances, I found a sentence of 15 months sufficient but not greater than necessary to satisfy the purposes of sentencing. This provided a significant punishment for a 56 year old first-time offender, while acknowledging the other mitigating factors discussed above.

## IV. CONCLUSION

For the foregoing reasons, I committed defendant to the custody of the Bureau of Prisons for 15 months. Based on her financial situation and the restitution, I waived a fine. I ordered her to make restitution to the victim in the total amount of $1,035,763.75, making payments of not less than $200/month on release. I further imposed a supervised release term of three years, the maximum, to ensure monitoring and payment of restitution. As conditions, I prohibited any gambling given her addiction, which caused her to commit the instant offense. This condition was reasonably related to the offense, her character, and the need to protect the public, deter, and address her treatment needs. Given the extent of her addiction, a ban on gambling was necessary and involved no greater deprivation than required. I also imposed financial monitoring conditions to ensure that she paid restitution and to allow the probation officer to supervise her finances, and barred employment having fiduciary responsibilities without notice to the employer. These conditions were reasonably related to the instant offense and involved no greater deprivation of liberty than reasonably necessary to deter, protect the

public, and ensure restitution.  See <u>United States v. Siegel</u>, 753 F.3d 705 (7th Cir. 2014).  They also largely tracked the recommendations from her counselor.

Dated at Milwaukee, Wisconsin, this 3rd day of October, 2014.

/s Lynn Adelman
LYNN ADELMAN
District Judge